# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN JOHNSON,<br><br>              Plaintiff,<br><br>    v.<br><br><br><br>ENDURANCE INTERNATIONAL GROUP HOLDINGS, INC., JAMES C. NEARY, JEFF FOX, ANDREA J. AYERS, DALE CRANDALL, JOSEPH P. DISABATO, TOMAS GORNY, PETER J. PERRONE, CHANDLER J. REEDY, JUSTIN L. SADRIAN, and ALEXI A. WELLMAN,<br><br>             Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff John Johnson ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Endurance International Group Holdings, Inc. ("Endurance" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public

statements; and (d) review of other publicly available information concerning Endurance and the Defendants.

## SUMMARY OF THE ACTION

1. This is an action brought by Plaintiff against Endurance and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of the Company to affiliates of Clearlake Capital Group L.P. (the "Proposed Transaction").

2. On November 1, 2020, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with Razorback Technology Intermediate Holdings, Inc. ("Parent") and Razorback Technology, Inc. ("Merger Sub," and together with Parent, "Razorback"). Pursuant to the terms of the Merger Agreement, the Company's shareholders will receive $9.50 in cash per share of Endurance common stock owned (the "Merger Consideration").

3. On December 14, 2020, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Endurance and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Endurance shareholders before the vote on the Proposed Transaction or, in the event the

Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, the owner of Endurance shares.

9. Defendant Endurance is incorporated under the laws of Delaware and has its principal executive offices located at 10 Corporate Drive, Suite 300, Burlington, Massachusetts 01803.  The Company's common stock trades on the NASDAQ Global Select Market under the symbol "EIGI."

10. Defendant James C. Neary ("Neary") is and has been a director of Endurance at all times during the relevant time period.

11.     Defendant Jeff Fox ("Fox") is and has been the President, Chief Executive Officer, and a director of Endurance at all times during the relevant time period.

12.     Defendant Andrea J. Ayers ("Ayers") is and has been a director of Endurance at all times during the relevant time period.

13.     Defendant Dale Crandall ("Crandall") is and has been a director of Endurance at all times during the relevant time period.

14.     Defendant Joseph P. DiSabato ("DiSabato") is and has been a director of Endurance at all times during the relevant time period.

15.     Defendant Tomas Gorny ("Gorny") is and has been a director of Endurance at all times during the relevant time period.

16.     Defendant Peter J. Perrone ("Perrone") is and has been a director of Endurance at all times during the relevant time period.

17.     Defendant Chandler J. Reedy ("Reedy") is and has been a director of Endurance at all times during the relevant time period.

18.     Defendant Justin L. Sadrian ("Sadrian") is and has been a director of Endurance at all times during the relevant time period.

19.     Defendant Alexi A. Wellman ("Wellman") is and has been a director of Endurance at all times during the relevant time period.

20.     Defendants Neary, Fox, Ayers, Crandall, DiSabato, Gorny, Perrone, Reedy, Sadrian, and Wellman are collectively referred to herein as the "Individual Defendants."

21.     The Individual Defendants, along with Defendant Endurance, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

22.     Endurance is a leading provider of cloud-based platform solutions that helps millions of small businesses worldwide with products and technology to enhance their online web presence, email marketing, business solutions, and more. The Company's brands include: Constant Contact, Bluehost, HostGator, and Domain.com, among others. Headquartered in Burlington, Massachusetts, Endurance employs over 3,800 people across the United States, Brazil, India and the Netherlands.

### The Company Announces the Proposed Transaction

23.     On November 2, 2020, the Company jointly issued a press release announcing the Proposed Transaction. The press release stated in part:

> BURLINGTON, Mass., Nov. 02, 2020 (GLOBE NEWSWIRE) -- Endurance International Group Holdings, Inc. ("Endurance" or the "Company") (Nasdaq:**EIGI**), a leading provider of cloud-based platform solutions designed to help small and medium-sized businesses succeed online, announced today that it has entered into a definitive merger agreement to be acquired by affiliates of Clearlake Capital Group L.P. ("Clearlake") in an all cash transaction valued at approximately $3.0 billion including outstanding indebtedness.
>
> Under the terms of the definitive agreement, which has been unanimously approved by the members of the Endurance Board of Directors, affiliates of Clearlake will acquire all of the outstanding common shares of Endurance for $9.50 per share in cash. The purchase price represents a 79% premium over Endurance's unaffected share price of $5.30 as of September 25, 2020, the last trading day prior to media speculation about a potential transaction, and a 64% premium to its closing share price on October 30, 2020 of $5.81.
>
> A special meeting of Endurance shareholders will be held promptly following the filing of a definitive proxy statement with the U.S. Securities and Exchange Commission (the "SEC"). Certain affiliates of Warburg Pincus and Goldman Sachs Private Equity Partners have entered into a voting agreement committing them to, among other things, vote approximately 36% of the outstanding shares of Endurance common stock in favor of adopting the acquisition agreement.

"We are pleased with this agreement which recognizes the value of our multi-brand scale platform. We are proud to serve approximately 5 million customers worldwide as a provider of solutions that help small and medium businesses succeed online and enhance the value of their customer relationships," said Jeff Fox, President and Chief Executive Officer of Endurance.

"The Endurance family of brands has built a leading position in the large and growing cloud hosting, domain, and digital marketing software space. We look forward to partnering with this talented team and supporting its long-term strategic plan to drive growth through its focus on customer value. We are excited to leverage Clearlake's *O.P.S.*® framework to help the Company fuel growth both organically and through acquisitions," said Behdad Eghbali, Co-Founder and Managing Partner, and James Pade, Partner at Clearlake.

The proposed transaction is expected to close in the first quarter of 2021 and is subject to approval by Endurance shareholders, along with the satisfaction of customary closing conditions (including antitrust regulatory clearance). Clearlake will finance the transaction with a combination of committed equity financing from the Clearlake funds and has secured committed debt financing for the proposed transaction, which is not subject to any financing condition. Upon completion of the acquisition, Endurance will become a wholly owned affiliate of Clearlake.

For further information regarding the terms and conditions contained in the definitive merger agreement, please see Endurance's Current Report on Form 8-K, which will be filed in connection with this transaction.

Given today's announcement, Endurance is releasing its third quarter 2020 financial results concurrent with this announcement. The Company does not intend to hold a conference call on Thursday, November 5, 2020 to discuss earnings as previously announced.

Centerview Partners and Goldman Sachs are acting as co-financial advisors and WilmerHale as corporate counsel to Endurance.

J.P. Morgan, BofA Securities, Deutsche Bank Securities, and UBS Investment Bank provided committed debt financing, and alongside Rothschild & Co and Lazard acted as financial advisors to Clearlake. Sidley Austin LLP is serving as corporate/M&A counsel and Kirkland & Ellis LLP as financing counsel to Clearlake.

**FALSE AND MISLEADING STATEMENTS
AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT**

24. On December 14, 2020, the Company authorized the filing of the Proxy Statement with the SEC. The Proxy Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

25. Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

## Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Company's Financial Projections

26. The Proxy Statement contains projections prepared by the Company's and Pioneer's management concerning the Proposed Transaction, but fails to provide material information concerning such.

27. The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1] Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

28.     In order to make management's projections included in the Proxy Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

29.     Specifically, with respect to the projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) Adjusted EBITDA; and (ii) unlevered free cash flow.

30.     Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.  Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding Centerview's Financial Opinion

31.     The Proxy Statement contains the financial analyses and opinion of Centerview Partners LLC ("Centerview") concerning the Proposed Transaction, but fails to provide material information concerning such.

32.     With respect to Centerview's *Selected Public Company Analysis*, the Proxy Statement fails to disclose: (i) the individual multiples and metrics for each of the companies

---

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

observed in the analysis; and (ii) the basis for selection of the 2021E Adjusted EBITDA multiple range of 7.0x to 8.5x.

33. With respect to Centerview's *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose: (i) the individual multiples and metrics for each of the transactions observed in the analysis; and (ii) basis for selection of the range of 8.0x to 11.0x LTM Adjusted EBITDA.

34. With respect to Centerview's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying Centerview's selection of the discount rate range of 9.0% to 10.0%; (ii) the basis for Centerview's application of the range of Adjusted EBITDA terminal multiples of 7.0x to 8.5x; (iii) the basis for Centerview's application of the perpetuity growth rates ranging from 0.6% to 2.9%; and (iv) the Company's tax assets and net debt.

35. With respect to Centerview's *Premia Paid Analysis*, the Proxy Statement fails to disclose: (i) the specific transactions observed in the analysis; and (ii) the premiums paid in each of the transactions.

36. With respect to Centerview's *Analyst Price Target Analysis*, the Proxy Statement fails to disclose the specific price targets observed in the analysis, as well as the sources thereof.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding Goldman Sachs' Financial Opinion**

37. The Proxy Statement contains the financial analyses and opinion of Goldman Sachs & Co. LLC ("Goldman Sachs") concerning the Proposed Transaction, but fails to provide material information concerning such.

38. With respect to Goldman Sachs' *Selected Companies Analysis*, the Proxy Statement fails to disclose: (i) the individual multiples and metrics for the specific companies

observed in the analysis; and (ii) the basis for Goldman Sachs' selection of the illustrative range of multiples of 7.0x to 8.5x.

39. With respect to Goldman Sachs' *Selected Transactions Analysis*, the Proxy Statement fails to disclose: (i) the individual multiples and metrics for the specific transactions observed in the analysis; and (ii) the basis for Goldman Sachs' selection of the illustrative range of multiples of 8.0x to 11.0x.

40. With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose: (i) the basis for using the illustrative range of multiples of 7.0x to 8.5x; and (ii) the inputs and assumptions underlying Goldman Sachs' use of the discount rate of 14%.

41. With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying Goldman Sachs' selection of the discount rate range of 9.50% to 10.50%; (ii) the basis for Goldman Sachs' application of the multiples ranging from 7.0x to 8.5x; (iii) the basis for Goldman Sachs' application of the implied perpetuity growth rates ranging from 1.1% to 3.4%; and (iv) the Company's net debt.

42. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

43. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

44. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

46. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

47. Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and

authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

48. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

49. The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

50. The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

51. The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or

failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

52. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

53. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### COUNT II

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

54. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

55. The Individual Defendants acted as controlling persons of Endurance within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Endurance, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

56. Each of the Individual Defendants was provided with, or had unlimited access to,

copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

57. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

58. In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

59. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

60. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

61. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.   Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.   Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.   Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D.   Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.   Granting such other and further relief as this Court may deem just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: December 23, 2020

Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
821 Franklin Avenue, Suite 209
Garden City, New York 11530
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*

15